BOARDWALK HOTELS CORPORATION, A CORPORATION, ETC., RELATOR, v. JOHN W. CONWAY, SUPERINTENDENT OF BUILDINGS OF THE CITY OF ATLANTIC CITY, ET AL., RESPONDENTS.

Argued May 8, 1929—Decided May 21, 1929.

Before Justices PARKER, BLACK and BODINE.

For the relator, *Merritt Lane.*

For the respondents, *Joseph B. Perskie.*

The opinion of the court was delivered by

BODINE, J. The matter comes before the court upon the relator's motion to quash the respondents' return to an alternative writ of *mandamus* allowed January 30th, 1929. The writ brings before the court the reasonableness of the refusal by the officials of Atlantic City to issue a building permit to the Boardwalk Hotels Corporation, hereinafter called the Hotel Company, in order that it might construct a four hundred-room hotel on part of the property upon which the Garden Pier is now located. The property lies eastward of the boardwalk in Atlantic City.

"There is no presumption of law or fact against a return unless it fails to answer the material allegations of the alternative writ. But if the return be in such form that the court can see that it is false, frivolous or calculated to embarrass or delay the remedy sought, a case is made for a motion to quash in a summary way and award a peremptory writ." *Byron* v. *Bayonne,* 79 *N. J. L.* 97.

It is to be noted that no depositions were taken by the respondents and no attempt was made to support the allegations in the return, although the relator challenged the same as sham. For convenience, the grounds of refusal will be examined in a somewhat different order than presented in the return.

The Hotel Company on October 25th, 1928, applied through its treasurer, Edward G. Costello, and its vice-president, Frederick W. Dreher, to John W. Conway, the superintendent of buildings of Atlantic City, for the permit in question. The Pier Realty and Holding Company, a Pennsylvania corporation, is owner of the fee. At the time of the application, the Hotel Company had an option for the purchase of the premises. Later the owner entered into an agreement to convey the premises to one Solomon F. Glenn. He, in turn, agreed to sell the property to the Hotel Company.

The first grounds for refusal of the permit is that the relator did not have a sufficient interest in the premises to justify the application for the building permit. The Atlantic City building ordinance provides (section 3), that an application for a permit may be made by the "owner or lessee, or agent of either, or the architect or builder employed by such owner or lessee."

Section 2, title "Definitions," subdivision D, provides: "The term 'owner' includes his duly authorized agent or attorney, a purchaser, devisee, *and any persons entitled to an interest in the property in question.*"

Broadly, the code permitted any person having an interest in the property in question to apply for a building permit. This interest might be either equitable or legal. The Hotel Company, by virtue of its option or agreement of purchase, had an interest in the property. The agreement of purchase, however, provides that if certain offers were received by the vendor, the vendee would lose its right of purchase unless there was an acceleration in the down payments. Certainly, there is nothing on the record to indicate that the Hotel Company has lost any of its interest under the agreement of purchase. And in the absence of proof to the contrary, it would appear that the Hotel Company did have an interest in the property in question, and under the building code it had a right to make an application for a permit.

The relator, on October 25th, 1928, tendered the fees required by law and submitted proper plans and specifications. Both Edward G. Costello and Frederick W. Dreher so testified. Further, John W. Conway, the Atlantic City superintendent of buildings, in response to a subpœna, produced all the plans, specifications and applications presented by the Hotel Company, and testified that these plans and specifications were those required by the building code, and that the estimated fee of $1,615 was tendered to him. In fact, he said that the relator complied with the rules and regulations of the code, but that he did not issue the permit because the mayor, who had nothing to do with the matter, had not approved the permit.

His testimony further shows that although the plans and specifications presented were not entirely complete that it never happened, when a large work was contemplated, that the plans and specifications were entirely in order when the permit was granted. The owner and architect, of course, work out details to a finer point as the work progresses. Mr. Conway may have somewhat modified his testimony on cross-examination. His redirect examination, however, confirms the essential parts of the testimony. It is clear that there was a substantial compliance with the code provisions as to plans, specifications and fees when the application was made. Suffice it to say that it appears that a building could be erected from the plans and specifications presented and that nothing further was ever requested and no fault was ever found with the plans until the litigation started. The failure to issue the permit was for some reason other than the failure to comply with the code provisions.

The return presents for a further reason for the failure to issue the permit, that the hotel when built will be partly on high water and partly on dry land, and that under the law the plans and specifications for such work must first be presented to the board of commerce and navigation. *Pamph. L.* 1914, *p.* 205. The fact appears to be to the contrary, but assuming it otherwise the statute merely requires that before such work is commenced the plans and specifications shall first be submitted to the board. Hence, there is no requirement to first go to the board.

The land in question is unrestricted by covenants, as appears from the evidence in the case, but if the contrary were the fact the municipality has no concern with the enforcement of private covenants. *Pumo* v. *Fort Lee,* 4 *N. J. Mis. R.* 663; *Maplewood Township* v. *Margolis,* 5 *Id.* 131; *affirmed,* 104 *N. J. L.* 177.

In 1889, Atlantic City was given authority to lay out a boardwalk and condemn lands for park purposes. In 1894 (*Pamph. L., p.* 146, § 6), the legislature enacted that when such park lands are purchased, condemned or dedicated and devoted to the public use, "that the view of the ocean from the interior line so established and from the elevated public

walk when the same is or shall be constructed &ast; &ast; &ast; shall be free, open or unobstructed." It is the contention of the city that the relator's hotel would obstruct the view from the boardwalk and would be in derogation of the obligation imposed upon it by the legislature some thirty-five years ago.

The city has done nothing in all these years about the public park, and there is no evidence that it contemplates doing anything about it. It attempts to show that it is financially unable to take over the property necessary to carry out the park scheme, but this is not a situation for which the relator is responsible. There are structures to the eastward of the boardwalk, not only the Garden Pier but the General Motors building. There is no law that requires the owner of land to refrain from its full use because sometime the city may take it, and the financial ability or inability of the city to take it now makes no difference.

The Supreme Court of the United States said, in *Nectow* v. *City of Cambridge,* 277 *U. S.* 183 (at *p.* 188) : "The governmental power to interfere by zoning regulations with the general rights of the landowner by restricting the character of his use, is not unlimited, other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals or general welfare." Certainly in the absence of restrictions, the owner of land is entitled to a use that will not substantially interfere with the general welfare, public health, safety and morals. On the land in question at present is a theatre. The desired permit is for a hotel.

The twelfth paragraph of the return, in part, alleges that the hotel on the pier is a live hazard. The question immediately occurs what sort of a hazard is the twenty-year-old theatre building? Mr. Conway testified that the safety of the structure had nothing at all to do with the refusal of the permit. The erection of any building creates a live hazard or fire hazard, but that is no reason why a permit in a proper case should not be granted.

It is apparent from the foregoing that the reasons presented in the return are false and frivolous.

A peremptory writ should forthwith issue.